UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMERICAN REF-FUEL COMPANY OF NIAGARA, LP,

Plaintiff,

-vs- 02-CV-814C(F)

GENSIMORE TRUCKING, INC.,

Defendant.

---

In this action, plaintiff American Ref-Fuel Company of Niagara, LP, seeks to recover against defendant Gensimore Trucking, Inc., for property damage sustained as the result of an explosion in a storage silo at plaintiff's "waste-to-energy" facility located in Niagara Falls, New York. Defendant now moves for summary judgment dismissing the complaint. For the reasons that follow, defendant's motion is denied in part and granted in part.

**BACKGROUND**

The following facts, adapted from the parties' statements filed pursuant to Rule 56.1 of the Local Rules of Civil Procedure of the United States District Court for the Western District of New York (*see* Items 72 and 78), are undisputed.

American Ref-Fuel owns and operates a waste-to-energy facility in Niagara Falls, at which it burns municipal solid waste for conversion into energy in the form of steam and electricity. The conversion process involves the use of the product "Sorbalime," which is introduced into the facility's air pollution control system to remove heavy metal contaminants prior to release of cleaned gasses into the atmosphere.

Sorbalime was developed and patented in Germany by the Marker Company, and was originally marketed and sold in North America pursuant to a license granted to the Dravo Lime Company, located in Pittsburgh, Pennsylvania. The product consists of a combination of activated carbon, elemental sulfur, and lime. These components are blended in varying percentages by weight, depending on the specifications of each particular customer based on its individual capacity and use.

In 1997, Dravo Lime entered into a contract with American Ref-Fuel to provide Sorbalime at its Niagara Falls facility (*see* Item 73, Ex. H). According to Dravo Lime's "Certification of Sorbalime® Composition," American Ref-Fuel specified a "target" composition of 2.5% activated carbon, 1.1% elemental sulfur, and 96.4% lime (Item 78, Ex. 1).

Defendant Gensimore is a trucking company located in Pleasant Gap, Pennsylvania. Gensimore became involved with Sorbalime in 1997 when it was approached by David Gabis of Elite Steel, a company that worked with Dravo Lime. Acting as intermediary between Gensimore and Dravo Lime, Mr. Gabis entered into a contract with Gensimore to provide blending and delivery services for Dravo Lime's Sorbalime customers. Under this arrangement, Gensimore would obtain the necessary component materials from Dravo Lime or local suppliers, and would prepare the Sorbalime blend according to the product specifications for each individual customer. Gensimore would then deliver the product to the customer and send the bill to Dravo Lime (*see generally* Transcript of Daniel Gensimore's Deposition, Item 73, Ex. D; *see also id.*, Ex. I).

In October 1998, Dravo Lime was purchased by Carmeuse N.A., also located in Pittsburgh. Carmeuse is engaged in the business of designing, manufacturing, selling, and

distributing chemical and metallurgical lime and lime-related environmental technologies. The purchase included Dravo Lime's contractual and licensing rights, including all rights with respect to the licensing and sale of Sorbalime. Carmeuse also continued Dravo Lime's business relationship with Gensimore for the blending and delivery of Sorbalime. However, Carmeuse discontinued Mr. Gabis's services as middleman.

On August 31, 2000, Gensimore driver Paul Cogan arrived at American Ref-Fuel to deliver a pre-blended load of Sorbalime. Mr. Cogan testified that he had made the same trip from the Gensimore facility to the American Ref-Fuel plant more than fifty times and followed the same procedures for transfer of the product to American Ref-Fuel's storage silos. After signing in, weighing in, and delivering paperwork along with a one-gallon sample of the Sorbalime blend, Mr. Cogan backed the truck in alongside the silos to deliver the product. He attached a hose to an air compressor and began unloading the Sorbalime into one of the storage silos. When the truck was almost empty, an explosion occurred inside the silo, causing damage to the silo structure but no personal injuries (*see generally* Transcript of Paul Cogan's Deposition, Item 73, Ex. L).

Plaintiff originally commenced this action against Gensimore and Dravo Lime in November 2002, and amended the complaint in March 2003 to substitute Carmeuse for Dravo Lime, seeking to recover for the damage to the silo "in an amount in excess of $150,000" (Item 4, ¶ 10). Plaintiff alleges that the Sorbalime supplied by Carmeuse and Gensimore was "defectively designed, manufactured and blended," rendering it unreasonably dangerous and unfit for its ordinary and intended uses (*see, e.g., id.* at

¶ 12), giving rise to liability under theories of products liability, negligence, and breach of warranty.[1]

Gensimore now moves for summary judgment on the following grounds:

1. Plaintiff's claims based on products liability and negligence are subject to the affirmative defense of "contract specification."

2. Plaintiff's claim for breach of implied warranty is unavailable in this case, where only property damage is alleged.

Each of these grounds is discussed in turn below.

## DISCUSSION

### I. Summary Judgment

Under Rule 56, summary judgment may be granted if the court determines that there are no genuine issues of material fact to be tried, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a Rule 56 motion, the court's responsibility is not to resolve disputed issues of fact, but rather to assess whether there are any genuine issues of material fact to be tried, while resolving all ambiguities and drawing all reasonable inferences against the moving party. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citing *Anderson*, 477 U.S. at 248; *see also Murvin v. Jennings*, 259 F. Supp. 2d 180, 185 (D.Conn. 2003).

[1] Plaintiff also asserted a cause of action for breach of contract, but has voluntarily withdrawn this claim (*see* Item 78, Ex. 23, p. 6).

An issue of material fact is regarded as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995). After discovery, if the party against whom summary judgment is sought "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); see also *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 884 (1990).

## II. Contract Specification

New York law, which applies in this diversity action, *see, e.g., Philips Credit Corp. v. Regent Health Group*, 953 F. Supp. 482, 501 (S.D.N.Y. 1997) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 (1938)), provides an affirmative defense to a products liability claim against a manufacturer who assembled a product according to the plans and specifications in a contract with a "buyer," unless there is an obvious design defect which could be easily corrected. *Farrell v. Utilimaster*, 1998 WL 151042, at *4 (S.D.N.Y. March 31, 1998). Gensimore contends that this defense should apply to preclude the products liability and negligence claims made against it in this case because the Sorbalime it

delivered to American Ref-Fuel on August 31, 2000 was prepared pursuant to the specifications in the contract between American Ref-Fuel and Carmeuse, and in accordance with the ongoing business arrangement between Carmeuse and Gensimore.

The contract specification defense was first recognized in cases involving contractors and builders. *See Ryan v. Feeney & Sheehan Bldg. Co.*, 239 N.Y. 43, 46 (1924) (builder or contractor justified in relying upon plans and specifications in contract, unless they are "so apparently defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury."). It was later extended to cases involving manufacturers of component parts, *see Munger v. Heider Mfg. Corp.*, 90 A.D.2d 645, 456 N.Y.S.2d 271 (3rd Dep't 1982), and ultimately to manufacturers of complete products. *See Kern v. Roemer Mach. & Welding Co.*, 820 F. Supp. 719, 721 (S.D.N.Y. 1992), *aff'd*, 996 F.2d 302 (2d Cir. 1993). Essentially, the defense provides that, "if the [product] was assembled free of a manufacturing defect completely according to the plans and specifications of the buyer, the manufacturer will not be strictly liable for an injury caused by the product." *Kern*, 820 F. Supp. at 721.[2]

The difficulty in applying the contract specification defense in this case is apparent: plaintiff has come forward with evidence sufficient to raise a genuine issue of material fact with respect to whether the Sorbalime delivered by Gensimore on August 31, 2000, was blended "completely according to the plans and specifications" in the contract between American Ref-Fuel and Carmeuse. For example, plaintiff has submitted the report of Ara

[2]As explained in *Kern*, the contract specification defense applies to actions in negligence as well as strict products liability, since the two theories "'are, in New York, almost functionally equivalent.'" *Kern*, 820 F. Supp. at 721 (quoting *DeRosa v. Remington Arms Co.* 509 F. Supp. 762, 766 (E.D.N.Y. 1981)).

Nalbandian, a professional engineer retained by plaintiff for the purpose of providing an expert opinion as to the cause of the explosion in the storage silo (*see* Item 78, Ex. 6). Mr. Nalbandian conducted an on-site examination and "failure analysis" of the ruptured silo and concluded, based upon his investigation and his review of the laboratory analysis conducted on samples of the Sorbalime removed from the delivery truck, that the explosion "was caused by the non-homogenous and out-of specification mixture of Sorbalime supplied by Carmeuse and blended and delivered by Gensimore Trucking, Inc., to the American Ref-Fuel facility on August 31, 2000" (*id.* at p. 8). Plaintiff has also submitted the results of the sample analysis conducted at Standard Laboratories, reporting that the Sorbalime samples collected from the truck had an activated carbon content as high as 19.44 wt%, and an elemental sulfur content as high as 5.16 wt% (*see* Item 78, Ex. 13), indicating a Sorbalime blend well outside the target specifications of 2.5% activated carbon and 1.1% elemental sulfur.[3]

---

[3]The court notes Gensimore's objection to the method by which plaintiff has submitted Mr. Nalbandian's report, and the lab analysis results, for consideration on this motion--*i.e.*, as attachments to plaintiff's Local Rule 56.1 statement. Gensimore contends that this evidence is inadmissible for the purposes of summary judgment because it has not been authenticated by an affidavit made upon personal knowledge, as required by Fed. R. Civ. P. 56(e). *See H. Sand & Co., Inc. v. Airtemp Corporation*, 934 F.2d 450, 454-55 (2d Cir. 1991) (documents submitted in opposition to summary judgment motion must be presented by one with personal knowledge, must be authenticated and admissible); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 2722 ("To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."). However, in determining whether genuine issues of fact exist for trial, the court has the discretion to consider unauthenticated or otherwise objectionable evidence where it is apparent that the party may be able to authenticate and establish the admissibility of those documents at trial. *See, e.g., Multi-Tech Systems, Inc. v. Hayes Microcomputer Products, Inc.*, 800 F. Supp. 825, 844-45 (D.Minn. 1992). Here, it is clear that the plaintiff's expert report and accompanying exhibits (including the lab analysis results referred to in the text) were submitted to defendant pursuant to Fed. R. Civ. P. 29(a)(2)(B), in the ordinary course of discovery and without objection, and there is nothing in the parties' submissions to suggest that plaintiff will not have the opportunity to establish the authenticity and admissibility of this evidence at trial.

For its part, Gensimore submits the opinion of its own expert, Joseph Bieron, a chemistry professor at Canisius College, who reviewed the evidence and determined that the explosion was not caused by any improper blending of components but rather by a bad batch of highly volatile carbon supplied by Carmeuse (*see* Item 62). In his report, Professor Bieron also questions the integrity of the lab results relied upon by plaintiff's expert, stating that it was unclear whether the samples were gathered "in a scientifically precise manner" (*id.*). Gensimore reasons that because improper blending could not in any way impact the volatility of the carbon, and because there is no evidence that Gensimore blended this particular batch of Sorbalime any differently than it blended any other batch, plaintiff's claim that the blending was the cause of the accident cannot negate the application of the contract specification defense.

This reasoning is rejected. Far from establishing Gensimore's entitlement to the contract specification defense, the evidence submitted by the parties in connection with this motion illuminates the existence of genuine issues of material fact for trial on the central issue of causation. Simply stated, Mr. Nalbandian is of the opinion that the explosion was caused by the presence of too much activated carbon in the Sorbalime blend delivered to American Ref-Fuel by Gensimore on August 31, 2000, whereas Professor Bieron is of the opinion that the explosion was caused by the presence of carbon that was too volatile. In the court's view, the parties' summary judgment submissions have set the stage for a "battle of the experts" as to the cause of the explosion, which must be waged before a jury.

Accordingly, the court finds that Gensimore is not entitled to summary judgment in its favor on plaintiff's products liability and negligence claims.

**III. Breach of Implied Warranty**

Gensimore also seeks summary judgment dismissing plaintiff’s claim that, by delivering defective Sorbalime, Gensimore breached the implied warranties of fitness for a particular purpose and merchantability, and that the breach was a proximate cause of the explosion.

The Uniform Commercial Code ("UCC") governs the status of implied warranties in New York. *See Kolle v. Mainship Corp.*, 2006 WL 1085067, at *3 (E.D.N.Y. April 20, 2006) (citing *Novosel v. Northway Motor Car Corp.*, 460 F. Supp. 541, 545 (N.D.N.Y. 1978)). The UCC provides for two forms of implied warranties–an implied warranty of merchantability under UCC § 2-314, and an implied warranty of fitness for a particular purpose under UCC § 2-315. *Kolle*, 2006 WL 1085067, at *3. However, New York courts have consistently held that to recover for economic loss due to property damage allegedly caused by a breach of either of these implied warranties, the plaintiff must show that there was privity of contract with the manufacturer. *See Arthur Jaffe Associates v. Bilsco Auto Service, Inc.*, 58 N.Y.2d 993, 995 (1983); *Adirondack Combustion Technologies, Inc. v. Unicontrol, Inc.*, 17 A.D.3d 825, 827, 793 N.Y.S.2d 576, 579 (3d Dep’t 2005); *Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*, 122 A.D.2d 5, 26, 504 N.Y.S.2d 192, 193-94 (2d Dep't 1986).

In this case, it is undisputed that there was no contract between American Ref-Fuel and Gensimore, and plaintiff has not come forward with any showing–nor has it argued–that privity somehow otherwise existed with Gensimore sufficient to establish a claim for breach of implied warranty. “As the claims here relate solely to economic loss,

they must fail." *Leonard v. Tollycraft Corp.*, 1989 WL 1128247, at *5 (S.D.N.Y. October 19, 1989).

Accordingly, Gensimore is entitled to summary judgment dismissing plaintiff's claim for recovery of economic loss based on breach of implied warranty.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Item 71) is granted to the extent it seeks dismissal of plaintiff's breach of warranty claims, and denied in all other respects.

The court will hold a telephone conference with counsel on Friday, October 15, 2007, at 10:15 a.m. to discuss further proceedings in this case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: September 17, 2007
p:\opinions\02-814.sep1307